UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Criminal No. 23-CR-394-005 (TNM) |
| | : | |
| **OJ BROWN,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENENCING**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. As set forth below, the government respectfully requests that the Court sentence the Defendant, OJ Brown, to 60 months of incarceration and 4 years of supervised release. In support of this sentence, the government states the following.

**PROCEDURAL BACKGROUND**

On February 5, 2025, the Defendant pled guilty to Counts One and Two of the Indictment charging the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(vi) (Count One), and Conspiracy to Distribute and Possess with the Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine and a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(ii), and 841(b)(1)(C) (Count Two). On each count, the Defendant is facing a term of imprisonment of not less than 60 months (5 years) and not more than 40 years, a fine of $5,000,000, and a term of supervised release of at least four years. See Presentence Investigation Report ("PSR") dated July

1

3, 2025, at ¶¶ 123-124. The PSR reflects that Defendant's total offense level is 21 and his criminal history category is II, resulting in a Sentencing Guidelines imprisonment term of 60 months, which is also the mandatory minimum sentence. PSR at ¶¶ 48-58, 125.

## FACTUAL BACKGROUND

The Drug Enforcement Administration commenced an investigation into a drug-trafficking organization that imports into the United States and redistributes fentanyl, cocaine, and other controlled substances. Through the investigation, including wiretap interceptions of Defendant OJ Brown and others, law enforcement was able to identify the Defendant and others as being involved in this drug trafficking operation. From no later than 2022 and continuing until about November 2023, the Defendant conspired to, and did in fact, distribute and possess with intent to distribute fentanyl, cocaine and cocaine base. In aggregate, the converted drug weight for the amount of said mixtures and substances, including the reasonably foreseeable conduct of all the members of the conspiracy known to the Defendant, was no less than 100 kilograms but no greater than 400 kilograms of converted drug weight.

Specifically, the Defendant functioned as a redistributor of the fentanyl, cocaine, and cocaine base trafficked by the conspiracy. The Defendant collaborated with other members of the conspiracy to obtain bulk quantities of fentanyl, cocaine, and cocaine base, which the Defendant in turn redistributed in smaller, distribution-level quantities to customers in the District of Columbia.

For example, on March 17, 2023, the Defendant contacted Co-Conspirator Ronnie Rogers for the purpose of purchasing bulk quantities of cocaine. After making the purchase, Co-Conspirator Rogers texted the Defendant, stating: "there's 4 and ½ hours [you] only paid me for 32 hours." As

Defendant has admitted, this is code language that although the Defendant purchased 4.5 ounces of cocaine, the Defendant only paid Co-Conspirator Rogers $3,200, which was less than the agreed-upon price of roughly $800 per ounce of cocaine.

On March 19, 2023, Defendant Brown sought to be re-supplied with additional cocaine. In an intercepted call, Brown and Rogers had the following exchange:

> **RR (Ronnie Rogers)**: What situation, what we doin, what we doin? I dont even know.
> **OJB (OJ Brown)**: I got that, I got the 16 man but I gotta boy I told you that want that
> **RR**: Yeah, you told me about that, but the number you gave me is a lil ugly, uh I talk to you when I see you about that number for that, for them four girls goin to high school.
> **OJB**: Yea.
> **RR**: Aight, I tell you about that, um, what that is, but uh, I, I tell you what, what I do, what you got now, what you say you got.
> **OJB**: I got to, I got to 16, whatever.
> **RR**: Yea right, you got mine, you got mine.
> **OJB**: But [U/I] waiting to, so I told him I had to wait to talk to you.
> **RR**: Aight
> **OJB**: I mean if you need to go up a little bit let me know.

In the above call, Ronnie Roger and the Defendant are talking in code in an attempt to avoid law enforcement detection and prosecution. However, Defendant Brown's "16" reference means he has $1,600. Rogers' reference to the "four girls going to high school" means Defendant Brown was looking for four ounces of cocaine. "Girl" is a common code word for cocaine, while "boy" is a common code word for opioids like fentanyl. Later the same day, Rogers and Defendant Brown have a call during which Rogers stated to "come grab that" (directing the Defendant to come pick up the drugs).

Ten days later, on March 29, 2023, Rogers further clarified the price of cocaine to be purchased by the Defendant, texting the Defendant: "if you do work at the store, they want 34." This again was code that 4.5 ounces of cocaine would cost $3,400, which corresponds to Roger's per-ounce price for cocaine of approximately $800. The Defendant then responded that he did indeed intend

3

to purchase bulk quantities of cocaine from Rogers to then redistribute: "OK I need to work today when I get off.  I need you to have it ready for today for me to work."

Similarly, on April 8, 2023, the Defendant negotiated the purchase of nine ounces of cocaine and 40 grams of fentanyl from Rogers for redistribution purposes.  During intercepted telephone calls, Defendant Brown stated, "I got a move for the car you got."  Defendant Brown continued, "Listen, the one that uh, offered you the 64 for the car. . .. He got, I'm going to send you a text." Two minutes later, the Defendant texted Rogers, "I need 9 for the 64 and he got 24 for the football." One minute later, Rogers called the Defendant and stated, "I saw the text.  It didn't say if it was one in the kitchen."  Defendant Brown replied, "Football, football, football, football, for the rest of it.  I'm saying that (unintelligible)."  The Defendant continued, "9 for the 64."  Rogers confirms, "They want, they want to cook that food themselves?"  Defendant Brown responds, "Yeah."  Subsequently, Rogers said, "I didn't understand what you meant by the football." Defendant Brown, laughs and says, "Come on Slim."  Later in the conversation, Rogers said, "The number.  That's what I didn't understand.  I knew what the football was, but I didn't understand the number.  The 24."  Defendant Brown then stated, "Oh, he got $2,400.00 left.  He want all football."  Rogers then said, "Huh?"  Brown replied, "He want all football for the $2,400.00."  Still not understanding what Brown meant by "football," Rogers texted Brown, "Let me know what the football is, that's the only thing I'm missing."  One minute later, Rogers made an outgoing call to Brown and stated, "Ok, ok, ok, the only thing, look at them and tell me exactly what the football is."  Brown replied, "Ok."  Defendant Brown then texted Rogers, "Feint," which was Brown's abbreviation for "fentanyl."  Three minutes later, Defendant Brown called Rogers and asked, "Slim, you got it?"  Rogers replied, "Yeah.  Yeah.  But I still ain't know what

4

the number. Give me the number on that." Defendant Brown said, "24." Rogers then asked, "You just want 24 g's?" The Defendant responded, "No! I want . . . no, I want 2400 worth (laughing)." Rogers then instructed Defendant Brown to come to Rogers to pick up his drug order, and in subsequent interceptions that day, Defendant Brown confirms that he is about to arrive at Rogers' apartment and Rogers responds that he is on his way down to meet Defendant Brown. When Defendant Brown asked for "64 for the car," the car stands for cocaine (just like football stood for fentanyl given that both start with the letter "f"), and he wants 9 ounces of cocaine for $6,400, again in line with prevailing market prices for cocaine. When Rogers asked Defendant Brown if "they want to cook that food themselves" and Defendant Brown responded, "Yeah," Rogers was asking Defendant Brown if he wanted the cocaine in powder form or already "cooked" into crack. With respect to the fentanyl aspect of the conversation, when Defendant Brown identifies the substance as "feint," $2,400 would purchase approximately 40 grams, at the prevailing rate of $60 per gram.

Likewise, in June 2023, the Defendant negotiated the purchase of nine grams of fentanyl from Rogers. In an intercepted call, Defendant Brown told Rogers, "I'm over here at the boys club and I need nine golf shirts." Rogers responded that he could not supply the drugs that moment but could in the morning. Again, "boy" is a common reference to fentanyl. Additionally, the Defendant identifies "golf shirts" which starts with the letter "g" to specify that he wants 9 grams of fentanyl.

Communications evidence, as well as physical seizures and recoveries of many kilograms of fentanyl and cocaine over the course of the investigation, indicate that the Defendant coordinated with his D.C. area-based co-conspirators to traffic fentanyl, cocaine, and cocaine base in the

5

District of Columbia.

Defendant Brown is accountable for the following quantities of narcotics: no less than 49 grams of a mixture and substance containing a detectable amount of fentanyl; and no less than 644 grams of cocaine. These amounts result in an aggregate total converted drug weight under the United States Sentencing Guidelines of approximately 251 kilograms. This quantity represents the total amount involved in Brown's relevant criminal conduct, including amounts he distributed or possessed with intent to distribute, and amounts distributed or possessed with intent to distribute by his co-conspirators pursuant to jointly undertaken criminal activity that was reasonably foreseeable by Brown and within the scope of his conspiratorial agreement.

## SENTENCING FACTORS

In sentencing a defendant, after calculating the appropriate guideline range, the Court must consider the factors set forth in 18 U.S.C. Section 3553. See Gall v. United States, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. See Spanziano v. Florida, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); see also Williams v. New York, 337 U.S. 241, 251 (1949). Finally, under the guidelines and Section 3553, similarly situated defendants should receive like punishments. See 18 U.S.C. Section 3553(a)(6).

First, the government views this as a very serious offense. The Defendant was a member of a large drug trafficking conspiracy involving at least eight individuals, as reflected in the indictment in this case. The Defendant has agreed that he is accountable for distributing and

possessing with the intent to distribute quantities of fentanyl, cocaine base and cocaine. His distribution of fentanyl, cocaine, and crack cocaine, at least two of which are the most dangerous and addictive drugs in our community, establishes that the Defendant was indifferent to the destruction he and his co-conspirators were causing to the users of their illegal narcotics and to the community at large. Both fentanyl and crack cocaine are significant barriers to individual and communal prosperity, public health, and community safety. It contributes to the decay of our society and community and accounts for tens of thousands of deaths in this country each year. The will of the Defendant to continually make himself an available gateway for these drugs to enter the community shows his clear disregard for the individuals in the community and his paramount desire to make personal profit.

The Defendant's involvement in a drug trafficking conspiracy, notwithstanding the fact that drugs have devastated his own family, further evidences his unwavering desire to profit at the expense of his community. The fact that the Defendant has a prior drug trafficking conviction makes his present behavior even more egregious. See PSR ¶ 61. The law makes clear that such an offense is of a kind that requires serious consequences, to deter the recurrence of such conduct. A strong, though appropriate, sentence is necessary to ensure the safety of the community and, hopefully, to deter defendant Brown from engaging in similar criminal conduct in the future.

Accordingly, a sentence of 60 months incarceration will provide needed deterrence in order to protect the community from Defendant's criminal behavior. A sentence of 60 months of incarceration followed by four years of supervised release will also provide the Defendant with an adequate amount of time to take advantage of many of the programs offered by the Bureau of Prisons (BOP). These programs are intended to provide the Defendant with skills he needs to re-

enter society as a contributing member of it and to fulfill his societal responsibilities. The Probation Office has researched and identified available programs within the BOP, and the government hopes that the Defendant will take full advantage of those programs during his incarceration.   PSR at ¶ 134.

WHEREFORE, for the foregoing reasons and for any other reasons that may be raised at the hearing on this matter, the government asks that the Court sentence the Defendant to term of incarceration of 60 months, to be followed by 4 years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _/s/_ *George Eliopoulos*_____
GEORGE ELIOPOULOS
Assistant United States Attorney
D.C. Bar No. 390-601
MATTHEW KINSKEY
Assistant United States Attorney
601 D Street, N.W.,
5th Floor
Washington, D.C. 20530
202-252-6957
george.p.eliopoulos@usdoj.gov